### SMITH & SONS CO. v. TREXLER LUMBER CO.

(Circuit Court of Appeals, Second Circuit. July 22, 1914.)

#### No. 264.

TOWAGE (§ 7*)—COMPENSATION—BREAKING ICE.

 The breaking of ice to make a channel through which to tow a vessel is no part of the towage service, and one who contracted to pay for the towage of a schooner to its dock after her arrival at New York cannot be charged with the cost of breaking such channel.

 [Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 6, 7, 10; Dec. Dig. § 7.*]

Appeal from the District Court of the United States for the Southern District of New York.

This suit comes here upon an appeal from a final decree of the United States District Court entered on June 18, 1913, dismissing a libel. The action was brought for the breach of a charter party on the part of the respondent in not paying for certain towage services pursuant to the terms of the charter party. The respondent claimed that the towage services should not have been performed at the time they were rendered because of the ice on the Passaic river. A charter party was signed on November 16, 1911, by the terms of which it was agreed that upon the arrival of the schooner Melbourne P. Smith in New York Harbor on her voyage from Jacksonville, Fla., with a cargo of lumber, the respondent would pay the vessel's towage over and above $25 from Robbins Reef, N. Y., to the respondent's lumber dock on the Passaic river, N. J., and upon her discharge, back to anchorage at the same place in New York Bay. It was also agreed that respondent should have the privilege of naming the towing line to perform the service.

The schooner arrived at the port of New York on January 11, 1912, and anchored off Stapleton, Staten Island, where she remained until January 15th, when she was taken to Shooter's Island, where she remained until January 30th, when she was towed from there to respondent's dock near Newark, N. J., on the Passaic river. During all the time the vessel lay at Stapleton and

at Shooter's Island and also on the day she was towed, Newark Bay and the Passaic river were closed to navigation by ice. The libelant, after giving due notice to respondent to name a towing company and upon respondent's refusal to do so, employed tugs at an expense of $285 to tow the schooner to its dock on the Passaic river, and after the cargo was discharged, back to its original anchorage off Stapleton, or Robbins Reef. After deducting $25 allowance made by libelant to respondent on account of said towage in accordance with the charter party, and the sum of $25 received on account of such towage, the libelant claims there is due the balance of $235, with interest. This claim is disputed because it involves the expense of breaking ice through Newark Bay and the Passaic river in order to tow the schooner to its destination.

MacFarland, Taylor & Costello, of New York City (Willard U. Taylor and Alfred H. Strickland, both of New York City, of counsel), for appellant.

Hyland & Zabriskie, of New York City (Nelson Zabriskie, of New York City, of counsel), for appellee.

Before COXE and ROGERS, Circuit Judges, and HAND, District Judge.

ROGERS, Circuit Judge (after stating the facts as above). This suit grows out of a dispute over towage services, and involves a determination of the question whether an agreement "to pay vessel's towage" includes the expense of breaking a path through the ice when the ice had to be broken because there was no channel through the bay and the river, which were closed to navigation by the fact that their waters were frozen. Is breaking ice towage, so that a party who has agreed to pay a vessel's towage is under obligation to pay the expense of breaking the ice?

The definition of towage given in 1849 in The Princess Alice, 3 W. Rob. 138, 140, by Dr. Lushington, and which has been so often cited since, was as follows:

"Without attempting any definition which may be universally applied, a towage service may be described as the employment of one vessel to expedite the voyage of another, when nothing more is required than the accelerating her progress."

Towage service is aid rendered in the propulsion of a vessel. In The H. B. Foster, 11 Fed. Cas. 949 (1848), District Judge Betts said:

"Towage may be applied merely in aid of a vessel against adverse winds or tides, or in difficult passages, while she is in possession of her ordinary powers of locomotion."

In The Plymouth Rock (D. C.) 9 Fed. 413 (1881), District Judge Addison Brown adopted the definition of Dr. Lushington as already quoted. This definition has recently been referred to approvingly in an opinion rendered in the Privy Council by Sir Robert Phillimore in The Strathnaver, 1 App. Cas. 58, 63 (1875). Here he refers to it as "a very clear and precise statement of the law." In the Century Dictionary towage service is defined as:

"Aid rendered in the propulsion of vessels, irrespective of any circumstances of peril; the employment of one vessel to expedite the voyage of another ves-

. sel when nothing more is required than the acceleration of her progress. When used in contradistinction to 'salvage service, it is confined to vessels not in distress."

In the 65 years since Dr. Lushington defined the meaning of "towage service" no adverse criticism of his definition seems to have been made, and we are prepared to accept it as an accurate statement of the law. An agreement to pay a vessel's towage is an agreement to pay for the services of a vessel or vessels rendered in the propulsion of another vessel through the water when nothing more is required than the acceleration of her progress. The breaking of a channel through the ice in order that, after the ice has been broken, a vessel can be towed through is no part of towage service. And consequently expense involved in breaking the ice and creating the channel cannot be included in the expense of towage.

The charter party gave the respondent the right to name the towing line, and an agreement was made with a certain towing company to do the round trip for $50.. But that contemplated a trip through open water, and when the ice closed navigation the agreement was abandoned. Then the libelant made an arrangement with the Tice Towing Line to tow the boat and use three tugs for $75 a tug, and so informed the respondent on the day before the towage began. To the respondent's protest against it the libelant's agent is said to have replied:

"That is the best we can do, and the only one we could get to tow her, and we are going to tow her up there * * * and we are going to do it anyway."

And this bargain with the Tice Towing Line was concluded by the libelant before any notification was given to the respondent. When notification was given the libelant was told by the respondent that the arrangement was contrary to the charter party agreement, and respondent would not be responsible, and if the vessel was towed it would be wholly at the libelant's risk.

"Then Mr. Bryant [the libelant's representative] got a little bit mad about it; so did I. He said they would tow her up if it took $10,000, and our charter was written in such a way they would make us pay for it."

And the libelant was thereupon informed that the respondent would not pay $225 for the service.

The testimony showed that the ice in the bay was from 10 to 12 inches thick. It also showed that under ordinary circumstances, where the water was free from ice, one tug would have been sufficient to have towed the respondent's vessel. The manager of the towing line was asked, "Under ordinary circumstances, so far as the size of the vessel went, one tug would be perfectly able to take her up?" to which he replied, "Perfectly." As it was three tugs were used. Two tugs were sent ahead to break a channel through the ice. While three tugs had to be used in taking the vessel up to her dock on the Passaic river, only two were employed to bring her back. Seventy-five dollars for each tug was charged for taking her up and only $60 for bringing her back, making the cost $285 for the entire service.

According to the testimony of the manager of the company that did

the towing, two of the three tugs used in going up were used to make a channel by breaking the ice. And the witness West, who was in charge of the tug that did the towing up, testified that the other two tugs "were ahead breaking the ice." A deposition, however, was received in evidence from the master of the schooner in which he stated:

"We had one boat towing ahead and one along side and a third boat going ahead breaking the ice in the channel."

There is thus some conflict in the testimony, but the district judge found that two tugs were used in breaking ice and one in towing in going up. Where there is a conflict in the testimony the judge's finding of fact should be accepted. There is no testimony showing that any tug was employed in breaking the ice on the trip back.

The charge for the two tugs used in breaking ice on the trip up cannot be allowed. But the libelant is entitled to charge for the service of the one tug which towed the boat up and of the two tugs which towed her down, less $25 allowed and $25 paid.

The decree is reversed, with half costs of this court to the appellant, and the cause is remanded to the District Court, with instructions to enter a decree for the libelants for $85 and interest and one-half of the costs of that court.